## C. K. RHOADS v. JACOB DAVIDHEISER.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS
OF BERKS COUNTY.

Argued March 6, 1889—Decided March 17, 1890.
[To be reported.]

1. The diversion by a landowner of surface water, collecting on his land
   from rain and melting snow, out of the course which nature has pro-
   vided for it, in such way as to cause it to flow upon the land of an-
   other where it has not flowed before, is an actionable trespass.
2. An owner, in improving his land for agricultural purposes, may in-
   crease the flow of surface water in its natural channel, but he will be
   responsible for any damage resulting from his creating a new channel
   therefor which discharges it upon an adjoining owner.

Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM
and MITCHELL, JJ.

No. 32 January Term 1889, Sup. Ct.; court below, No. 33
December Term 1886, C. P.

On November 15, 1886, Cyrus K. Rhoads brought case
against Jacob Davidheiser, to recover damages for the washing
of surface water upon a lane of the plaintiff, alleging that the
same had been unlawfully turned upon his lane by the defend-
ant. The plea of the defendant was not guilty.

At the trial on April 18, 1888, the following facts were
shown: The plaintiff and the defendant were the owners of
adjoining farms, which lay upon the same sloping hillside, and
were separated by a line fence running from the top to the
bottom of the slope. Beside this fence, upon the plaintiff's
side of it, was a private lane ; upon the defendant's side, was
a channel or ditch extending along the fence. In July, 1886,
water coming from this channel flowed across to the plaintiff's
lane, and washed it so badly as to render it impassable.

The plaintiff presented testimony tending to prove that, while
some portions of the surface of his land were lower than the
surface of the defendant's land, the fence between them stood
upon ground higher than that on either side of it, and that the
natural drainage would not carry the surface water accumulat-

ing from rains upon the defendant's farm over to the plaintiff's lane; that the channel running along the fence upon the defendant's land was a natural drain, formed by the washing of water accumulating thereon from rain and melting snow; that this water had been accustomed for sixty years to flow down that channel, and find its way to the Schuylkill river, without passing upon the plaintiff's land; and that the defendant, by obstructing and filling up the channel, and constructing side drains under and through the line fence, had turned the water, flowing in times of rain, upon the lane of the plaintiff, thereby causing the injury to its road-bed above referred to.

The defendant presented testimony tending to prove that, at some places along the line between the two farms, including the places at which the water complained of crossed the line, the natural drainage would carry water from his farm upon the plaintiff's farm; that whatever he did in the way of filling up the channel was done for the purpose of preventing a washout to an undue depth; and that by constructing and maintaining a system of break-waters upon the roadway of the lane, the plaintiff could have prevented any injury to it from the water which flowed from the defendant's land, but that he did not take this precaution.

At the close of the testimony, the court, HAGENMAN, P. J., charged the jury in part as follows:

It seems that these two farms lie alongside of a hill, or at least rising ground, and that the Davidheiser farm is the upper farm. Generally, the land on the Davidheiser farm lies higher than on the Rhoads farm. Mr. Mauger, who was there as a surveyor, gave you the rise of the ground along this lane, which was in some places six feet to the hundred and in others seven feet to the hundred, and in one place as high as nine feet to the hundred.

First of all, what is the law that governs? Where two properties lie one below the other, all the rain or surface water that comes down, the lower owner is bound to take. You cannot ask that the upper owner shall build a wall or embankment and prevent the flow of the water down; but the law is that the lower owner must take all this rain water from the clouds, or snow water from the melting of the snow. You cannot dam

Charge of Court below.

the water back.   Water will not run up hill; it will run down hill; and the law is, where land is so located that rain water naturally descends from the estate of the upper to the lower, the inferior or lower owner cannot do anything to prevent the course of the water.   The upper owner cannot prevent it, and the lower cannot prevent it.

With that principle in mind, I will answer the points which have been submitted, and none of the points go beyond what I have stated.

The plaintiff requests the court to charge:

1. If from the nature and formation of the land, rains, melting snows, and other surface waters, form a natural channel in seeking an outlet, such channel is no more to be obstructed, in the eyes of the law, than the channel of a living stream which never fails; if the jury find that such a channel was formed on the Davidheiser property, and obstructed, so as to divert the water into plaintiff's lane, doing damage, the plaintiff is entitled to a verdict.

Answer: Affirmed.[1]

2. A natural water-course can be formed by the flow of surface water; it is an ancient water-course, if it has existed for twenty-one years.

Answer: Affirmed.[2]

3. Water must run as it is accustomed to run, that is, with nature; if the jury find that the defendant has obstructed the natural flow of the water, doing damage, he would be liable for such damage, and the verdict must be for the plaintiff.

Answer: Affirmed.[3]

4. No person has a right to fill up natural drains so as to cause more water on his neighbor's land; if the jury find that the defendant has filled a natural drain, which runs through his land, thereby causing more water than naturally would come there upon plaintiff, doing damage, he is liable for the injury done.

Answer: Affirmed.[4]

5. The owner of land may not improve his land by agricultural operations so as to cause a greater amount of water to flow on his neighbor's land than the natural condition of the place would occasion.   No one has a right to make his property more valuable by making his neighbor's less valuable.

Answer: Affirmed.[5]

6. If the jury should find that it is difficult to ascertain from the character of the surface what is the natural channel, then the course which the water has long, peaceably and openly been allowed to run will be taken as the natural channel.

Answer: Affirmed.[6]

7. Even though the natural course of the water is through the plaintiff's land, if the jury find that there has been an uninterrupted flow of the water for above twenty-one years through the lands of the defendant, the plaintiff would have a right to have the water flow in that manner.

Answer: Affirmed.[7]

The defendant requests the court to charge:

1. The law does not require the defendant, Davidheiser, to dig and maintain a ditch to carry the water over his land so as to keep it from running on the lands of Rhoads, the plaintiff; and if the water following the natural surface passes from the land of Davidheiser to the land of Rhoads and causes him damage, he is not, therefore, entitled to recover damages from the defendant.

Answer: Affirmed.

2. Under all the evidence in the case, the verdict should be for the defendant.

Answer: Refused.[10]

What, now, was the flow of the water on these two properties? It is claimed, on the part of the plaintiff, that there was a run, or ditch, or ravine—whatever you may choose to call it —along the line fence on the property of Davidheiser, and that run, or ditch, or ravine carried all the water, at least a great portion of the water, on the Davidheiser farm, down and discharged it below, passing down near the plaintiff's buildings to a culvert. That is the allegation of the plaintiff; that the line fence between that and the lane is higher than the land on either side of it, and that it acts as a kind of dam or embankment to prevent the water on the Davidheiser property from running over on to Rhoads's property.

You had a number of witnesses examined on the part of the plaintiff. The plaintiff himself and his witnesses stated that that was the flow of the water for many years, down this ravine, or run, or ditch alongside of the line fence. Several of

Charge of Court below.

the witnesses spoke of that, and that the only water which came down, on the lane was the water which fell into the lane itself; and that the water which came to the chestnut tree, of which they spoke, all ran down to the Davidheiser property; and it is charged that Davidheiser filled up in one or two places or more the run or ditch, and thereby caused the water to run over on the land of Rhoads, the plaintiff.

[The jury will have to ascertain from this evidence how this is; whether there was a run there, and existing for many years, and whether that was the natural channel or course for the water to flow on the Davidheiser property. If it was, then the plaintiff would have a right to say to the defendant, "You shall not fill up that course, or ditch, and force the water over on to myself."] [8]

On the other hand, the defendant has submitted testimony to the jury to show a contrary state of facts. . . . .

[This testimony is submitted to the jury, and the jury must from this testimony ascertain how that water was accustomed to flow. If there was a channel fixed on the property of Davidheiser where the water had run for a number of years, twenty-one years, for instance, and if there was a diversion from the natural course of drainage, Davidheiser would have no right to fill up that channel or drain.] [9] On the other hand, if the jury find that the water from the Davidheiser property was accustomed to flow down over the Rhoads property, as it was the lower property, the lower owner must take from the upper owner all the water that comes there. It cannot be dammed up. The upper owner is not required to do that. Nor can the lower owner put a ditch or wall along the line of his property, to drain it off on to the other owner. Water will run down; it will not run up hill. These are the facts for the jury to ascertain, and as you find these facts, so will be your verdict.

The damages, whatever they are, would certainly not be of a high character. This action is more to settle the question of right between these parties. . . . .

The jury rendered a verdict in favor of the plaintiff for $45. A rule for a new trial having been discharged, judgment was entered upon the verdict, when the defendant took this appeal assigning for error:

Arguments.

1–7. The answers to the plaintiff's points.[1 to 7]
8, 9. The parts of the charge embraced in [ ] [8 9]
10. The answer to the defendant's point.[10]

*Mr. H. Willis Bland*, for the appellant:

1. A definition of the rights which a landowner has and may exercise upon his own land, without subjecting himself to an action by an adjacent owner, is found in the opinion of Mr. Justice CLARK, in Penna. Coal Co. v. Sanderson, 113 Pa. 145. In that case, in Kauffman v. Griesemer, 26 Pa. 407, and in Martin v. Riddle, 26 Pa. 415, the right of a landowner to discharge water upon his neighbor's land, in the course of agriculture, was recognized. Obstructing or changing the direction and flow of surface water is not actionable: Washburn on Easements, 281. To constitute a water-course, such that interference with it will sustain an action, there must be something more than mere surface drainage. A ditch, like the one in question in the present case, is a water-course in the legal sense: Washburn on Easements, 468; Gannon v. Hargadon, 10 Allen 109; Flagg v. Worcester, 13 Gray 604; Bowlsby v. Speer, 2 Vroom 352 (86 Am. Dec. 216).

*Mr. William Kerper Stevens*, for the appellee:

1. The argument of the defendant is based upon the assumption that the doctrine of the common law, as contained in the decisions cited from the Massachusetts and New Jersey reports, upon the subject of the diversion or obstruction of the flow of surface waters, is the law of this state. But the rule of the civil law, which is directly the contrary, prevails here, its underlying principle being that surface waters must be allowed to run in their natural course, and that any obstruction or alteration of their flow, to the injury of another, is actionable: Kauffman v. Griesemer, 26 Pa. 407; Martin v. Riddle, 26 Pa. 415. The defendant had no right by artificial means to send upon the plaintiff's land, or particular parts of it, waters, or unusual quantities of water, which nature never appointed to flow there: Washburn on Easements, 485; Martin v. Riddle, 26 Pa. 415; Kauffman v. Griesemer, 26 Pa. 407; Hays v. Hinkleman, 68 Pa. 324; Laney v. Jasper, 39 Ill. 54.

2. It follows, from the general rule of law, that the channel

Opinion of the Court.

in which surface waters are accustomed to flow, is no more to be obstructed to the injury of an adjacent owner, than the channel of a living and unfailing stream: Kauffman v. Griesemer, supra. Even the courts of New Jersey have defined such a channel to be a natural water-course: Earl v. DeHart, 1 Beas. 280 (72 Am. Dec. 395); Kelley v. Dunning, 12 Stew. 482. The natural channel will always be taken to be that in which water has been accustomed to flow for a period sufficient to gain a prescriptive right: Martin v. Riddle, supra. The existence of the channel on the defendant's tract, through which the surface waters had been accustomed to flow for above twenty-one years, is the best evidence of the natural origin of such channel, and affords a conclusive presumption of the plaintiff's right to have such flow continued: Strickler v. Todd, 10 S. & R. 63.

OPINION, MR. JUSTICE McCOLLUM:

For convenience sake, we refer to the parties as they appear on the record in the Common Pleas.

It is established by the verdict of the jury that the defendant obstructed a water-course or channel on his farm, in which the surface water collected thereon was accustomed to flow, and that he constructed ditches from it by means of which the water was discharged upon the land of the plaintiff, to his injury. An examination of the evidence has satisfied us that it justified the verdict, and we have only to inquire whether the court committed any error in the instructions. It is essential to a correct appreciation of these, to consider the issue raised by the pleadings and the general scope of the proofs submitted by the parties.

It was affirmed by the plaintiff, and denied by the defendant, that the latter had diverted the surface water on his farm from its natural course, and caused it to flow upon the land of the former adjoining the division line between them. The testimony described the condition of the defendant's farm, and how and where the water gathered upon it, from rains and melting snows, had been discharged for sixty years preceding the injury complained of. It authorized a finding that prior to July 14, 1886, this water had not descended or been cast upon the land of the plaintiff, but that it had flowed in a channel on

the defendant's farm near the division fence, and through a culvert into the river; that the defendant, by placing obstructions in this channel and cutting ditches or drains from it, had caused the water to flow upon the land of the plaintiff, to his injury.

The material question for the jury, under the pleadings and the proofs, was whether the defendant had turned the water from its natural course upon his own farm into the land of the plaintiff, and the charge of the learned judge applied to this issue was free from substantial error. It related to the diversion of water from the course which nature had provided for it, and not to an increased flow of water in its natural channel, caused by the improvements and drainage required by good husbandry. Indeed, the defendant's criticism of the charge is based on decisions in other states, which are in clear conflict with our own well-settled rule on this subject. This rule is defined in Washburn on Easements, 3d ed., 450, where the learned author says : " It may be stated, on general principles, that by the civil law, where the situation of two adjoining fields is such that the water, falling or collected by melting snows and the like upon one, naturally descends upon the other, it must be suffered by the owner of the lower one to be discharged on his land, if desired by the owner of the upper field. But the latter cannot, by artificial trenches or otherwise, cause the natural mode of its being discharged to be changed to the injury of the lower field, as by conducting it by new channels, in unusual quantities, on to the particular parts of the lower field." The owner of the upper field may improve and drain it for agricultural purposes or the like, and in so doing may increase the flow of water in the natural channel for it; but if he diverts it from this channel, and creates a new course, by which it is discharged upon the lower field at another place, he must answer for the damages caused by the diversion.

The rights and duties of the proprietors of adjoining lands, with reference to the water collected upon them from rain and melting snows, were so carefully considered and defined in Kauffman v. Griesemer, 26 Pa. 407, and in Martin v. Riddle, 26 Pa. 415, that an extended discussion or re-statement of them in the present case is unnecessary. The doctrine of these cases was approved and applied in Miller v. Laubach, 47 Pa. 154,

and in Hays v. Hinkleman, 68 Pa. 324; and it was enforced by the learned judge in his charge to the jury on the trial of this issue.

Judgment affirmed.