## Meixell, Appellant, v. Morgan.

[Marked to be reported.]

*Water course—Dominant and servient tenements—Drainage.*

The owner of land on a higher level has a right to lay artificial drains on his land to carry off the ordinary rain fall and discharge of water at one point upon the land of his neighbor on a lower level, where that point is the natural watershed for both tracts, and there is an open ditch on the lower land into which the waters from the higher land naturally descend, provided the water from the drains does not materially increase the flow of water upon the land of the lower owner and work injury to him.

The flow of water from a dominant to a servient tenement may be increased in the drainage of land, whether on the surface or underground, but care must be taken in doing so not to cause an unnecessary injury, and the water must not be diverted from its natural channel by the opening of new or different channels.

149    415
27 SC  580
149    415
30 SC  ²313

Argued May 11, 1892.   Appeal, No. 240, Jan. T., 1892, by plaintiff, Martin Meixell, from judgment of C. P. Union Co., Sept. T., 1888, No. 25, on verdict for defendant, John Morgan. Before PAXSON, C. J., GREEN, WILLIAMS, MITCHELL and HEYDRICK, JJ.

Trespass for discharging water upon plaintiff's land.

The facts sufficiently appear by the opinion of the Supreme Court.

On trial before McCLURE, P. J., the court charged the jury in part as follows :

" Gentlemen of the jury, the learned counsel for the defendant concedes that if the lay of the land of the plaintiff was such that the water falling upon it naturally flowed to the land of the plaintiff at the point ' A ' on the draft, he had a right for agricultural purposes to draw open furrows deep enough to concentrate and rid the water from his field above to the point of discharge at the point ' A.'   But he insists that whilst he could make furrow drains he was not justified in law in laying tile drains, or as he denominates them, mole drains, by which is meant, as I understand it, covered or concealed drains.   He further insists that if this was done and water was thereby caused to flow on the lands of the plaintiff at the point ' A ' that he is entitled to nominal damages, even though no

injury resulted, basing his claim for damages upon the fact that if nominal damages were not granted the defendant would acquire a right to cast his water upon the land of the plaintiff. But, gentlemen of the jury, I instruct you that such is not the law.   If you believe the contention of the defendant to be true, that there was an open drain from the bridge through the land of the plaintiff up to ' B ' and from there up to the point ' A,' and that this open ditch was in existence at the time that Mr. Rodenbaugh (defendant's predecessor) went upon the premises, about 1871, and constructed these drains in dispute, upon his own land, taking into consideration the fact that there was no standing body of water on the Rodenbaugh lands above—no water there, if the evidence is to be believed, except that which descends from the falling rains or from the melting snows, then we instruct you [that he had a right to collect those waters by means of drains and discharge them upon the land of the plaintiff at the point ' A.' "] [4]

Plaintiff's 1st, 2d and 5th points, and the answers thereto, are given in the opinion of the Supreme Court.

*Errors assigned* were (1–3) the refusal of plaintiff's 1st, 2d and 5th points, quoting points and answers ; (4) the charge as above in brackets, quoting it in substance.

*J. Merrill Linn*, for appellant.—Injuries by flowing surface water, done to a neighbor as the result of ordinary farming operations required by good husbandry and proper improvement of the surface, are not actionable : Templeton v. Vashloe, 37 Am. Rep. 150.   The distinction seems to be between injuries occasioned by strictly agricultural operations, and those occasioned by works designed to reclaim or improve land : Livingston v. McDonald, 21 Iowa, 160 ; s. c., 89 Am. Dec. 563.   No right exists to concentrate and discharge water on adjacent lands, although it would naturally flow in that direction : 35 Am. Rep. 431.   See the cases collected in 6 Am. & Eng. Enc. of Law, 16, etc.

*Andrew A. Leiser*, for appellee, cited : Martin v. Riddle, 26 Pa. 415, 416 ; Kauffman v. Griesemer, 26 Pa. 407, 413 ; Penna. Coal Co. v. Sanderson, 113 Pa. 126, 147, 160 ; Hughes v. Anderson, 68 Ala. 280 ; s. c., 44 Am. Rep. 147 ; Peck v. Herrington, 109 Ill. 611 ; s. c., 50 Am. Rep. 627 ; Vannest v. Fleming,

79 Iowa, 638; s. c., 18 Am. St. Rep. 387; Rhoads v. David-heiser, 133 Pa. 226, 233; Swett v. Cutts, 11 Am. Law Reg. N. S. 24.

OPINION BY MR. CHIEF JUSTICE PAXSON, May 23, 1892:

This was an action of trespass by the owner of the servient tenement against the owner of the dominant, to recover damages for collecting all the waters which would pass from the dominant to the servient, to one spot, by artificial underdrains, and discharging them there.

Upon the trial below, the court was requested by the plaintiff's second and fifth points, to instruct the jury that if they believe that underdrains were made and concentrated to one point, that said underdrains discharged a larger quantity of water at that point than by surface discharge would naturally flow, the plaintiff is entitled to recover; and that it makes no difference in such case whether there was a ditch at that point of the discharge or not.

The court refused these points, and for further answer referred to the answer to plaintiff's first point.

It is therefore necessary to examine the first point, and the answer thereto, in order to ascertain whether the jury were properly instructed.

The first point is as follows: "That while the Meixell land is bound to receive all the surface water from Morgan's land, which would naturally go that way by the inclination of the land, and all the water that may be led by superficial cultivation, that a different principle obtains in cases of artificial, concealed or mole drains; that Morgan cannot concentrate all the water by underground drains and discharge them at one point.

"Answer: Refused as put. The defendant had a right to lay an artificial drain on his land to carry off the ordinary rainfall and discharge the water at one point, if the jury find that point was the natural watershed for both tracts of land, and further find that there was an open ditch on the plaintiff's land into which the waters from the defendant's land naturally descended, and further find that the water from the drains did not materially increase the flow of water upon the defendant's land and work injury to him. If the point of discharge of the defendant's drains was not the natural outlet for the water

from the defendant's land over that of the plaintiff, and there was no ditch at the point of discharge on the plaintiff's land to receive and carry off the water, and the defendant collected the water on his own land by underdrains, and discharged it on the plaintiff's land in greater volume than it would naturally flow there, and thereby injured the plaintiff, then we affirm the point, and plaintiff can recover."

This ruling was as favorable to the plaintiff as he had any right to expect. It is settled law that, "for the sake of agriculture, a man may drain his ground which is too moist, and discharging the water according to its natural channel, may cover up and conceal the drains through his lands; may use running streams to irrigate his fields, though he thereby diminishes, not unreasonably, the supply of his neighbor below; and may clear out impediments in the natural channel of his streams, though the flow of water on his neighbor's land be thereby increased:" Kauffman v. Griesemer, 26 Pa. 407; Penna. Coal Co. v. Sanderson, 113 Pa. 126.

If it were the law, that under no circumstances could the flow of water from the dominant to the servient tenement be increased, it would seriously interfere with agricultural and mining operations. The very act of draining land necessarily increases the flow of water, whether such drainage is caused by open ditches or underground tiles. In doing so, however, care must be taken not to cause unnecessary injury to the owner of the servient tenement. The water must not be diverted from its natural channel by the opening of new or different channels.

Judgment affirmed.