Chamberlin, Appellant, *v.* Ciaffoni.

Argued March 30, 1953. Before STERN, C. J., STEARNE, JONES, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Joseph M. McClure,* with him *Robert G. MacAlister,* for appellants.

*John R. Bowman,* for appellee.

OPINION BY MR. CHIEF JUSTICE HORACE STERN, April 22, 1953:

Plaintiffs' bill of complaint alleged that they and defendant are the respective owners of properties in

Pittsburgh separated by a 10-foot wide alley known as Ingomar Way; that defendant regraded the surface of his land, thereby causing a diversion of the natural course of the surface waters and their discharge from his property onto the alley and into the basement of the building on plaintiffs' lot; that plaintiffs suffered expense and loss of profits in the operation of their business there conducted; that defendant also deposited large amounts of earth and fill on the alley. The bill prayed that an injunction be granted to restrain defendant from the acts in question, and that he be required to reimburse plaintiffs for their damages.

Unfortunately for the success of plaintiffs' action the facts found by the learned chancellor do not bring it within the class of cases in which the law affords either equitable or legal relief. Those findings are not challenged by plaintiffs. Concisely stated, they are to the effect, (finding number 4) that plaintiffs' property is below the natural grade of defendant's property and therefore, even before the latter began the improvement of his property, surface water flowed from it onto plaintiffs' property, where it was satisfactorily dissipated by means of a storm sewer which was constructed there; (finding number 5) that, in the course of improving his property, defendant raised its natural grade; (finding number 6) that during the course of the improvement, which lasted about 12 months, a large amount of earth and other material was permitted to fall on Ingomar Way and some on plaintiffs' property; that rain and other surface waters were diverted from their natural courses to Ingomar Way and the rear of plaintiffs property in such quantities as to exceed the capacity there of the disposal facilities, with the result that on several occasions water entered the basement of plaintiffs' building causing damage thereto and to the business there carried on; (finding number

7) that in a proceeding in equity brought by the City of Pittsburgh against defendant the latter was ordered to remove all the dirt, fill and other material deposited by him on Ingomar Way; (finding number 8) that defendant complied with this order, did remove the dirt and other material, and constructed cribbing on the line of his property along Ingomar Way, which prevented any such material thereafter from falling thereon; (finding number 9) that defendant asphalted the surface of his land and constructed a raised area or curbing along a portion of the line of Ingomar Way, which prevented thereafter any surface water from flowing directly from his property onto Ingomar Way; (finding number 10) that defendant has constructed on his property basins and sewers which catch a great deal of the surface water, and, even though at times they do not prevent some water from flowing down Ingomar Way and onto the rear of plaintiffs' property, such flow is much less in amount than reached plaintiffs' property from defendant's property at its natural grade and causes no damage to plaintiffs' property beyond that which surface water formerly caused.

It must be immediately obvious from these findings that, at the time of the hearing and adjudication, the conditions complained of by plaintiffs had been remedied and therefore the court was justified in refusing, as it did, to grant an injunction. This left open the sole question as to whether plaintiffs should, in these proceedings, have been awarded compensation for the expense and losses alleged to have been incurred by them during the period of the making of the improvements on defendant's property. The damages claimed by them may be classified as (1) losses incurred in their business by reason of the deposit of earth and fill on Ingomar Way and on part of plaintiffs' property, whereby, as they contend, the traffic of trucks

through the alley was impeded; (2) expense incurred in repairing the damage caused by the greater flow of the surface waters during that period onto their land and into the basement of their property. The court refused to allow recovery for any such damages and dismissed the bill.

(1) As to the deposit of earth and fill on plaintiffs' property, the court pointed out that this was not alleged nor made the subject of any claim in the bill of complaint and therefore cognizance could not be taken of it in the present proceedings; accordingly, plaintiffs were relegated to an action of trespass q.c.f. in regard thereto.

As to the blocking of Ingomar Way by the deposit thereon of earth and material, whereby the passage of trucks thereon was interfered with, no items of damage were specifically proved as arising from that situation and any award of damages therefor would have been unwarranted and wholly speculative. The court properly said as to this claim that "From the evidence, it would be impossible for the Chancellor to assess the damages which may have resulted to the plaintiffs from the obstruction of the alley. The plaintiff, Robert L. Chamberlin, contends that access to the rear of his property was prevented and hence his business was damaged. To separate the damages which may have resulted from that cause from the total damage including the flooding of the basement, would be purely conjecture."

(2) As to the damage caused by the flow of the surface waters onto plaintiffs' property and into their basement, the court below correctly held that this was damnum absque injuria. Under the so-called "common-law" or "common-enemy rule," not only is an owner of higher land under no liability for damages to an owner of lower land caused by water which naturally flows

from the one level to the other, but he can, at least in the development of urban property, improve his land by re-grading it or erecting buildings thereon, without legal responsibility for any consequent diversion of surface waters from his property to that of adjoining owners, it being recognized that changes or alterations in the surface may be essential to the enjoyment of his property.

As early as a century ago it was declared in Pennsylvania in *Kauffman v. Griesemer* 26 Pa. 407, 413, that "Because water is descendible by nature, the owner of a dominant or superior heritage has an easement in the servient or inferior tenement for the discharge of all waters which by nature rise in or flow or fall upon the superior." And it was there held that the superior owner might improve his land by throwing increased waters upon the inferior owner's property through the natural and customary channels.

In *Strauss v. Allentown,* 215 Pa. 96, 98, 63 A. 1073, it was stated that "Every man has the right to the natural, proper and profitable use of his own land, and if in the course of such use without negligence, un-avoidable loss is brought upon his neighbor, it is dam-num absque injuria. This is the universal rule of the common law, and nowhere is it more strictly enforced than in Pennsylvania." Hence it was held that a city was not liable to a property owner for the increased flow of surface water over or onto his property arising merely from the changes in the character of the surface produced by the opening of streets and building of houses in the ordinary and regular course of expansion of the city.

In *Rielly v. Stephenson,* 222 Pa. 252, 70 A. 1097, it was held that the owner of a lot in a city or town might, in improving it, raise its grade, even though the result was that the water which had previously

spread over the surface of both lots now ran over that of plaintiff, and that defendant, in such case, was not liable to the latter for any damages thereby occasioned. Chief Justice MITCHELL said (p. 256, A. p. 1099) : "The owners of lots in cities and towns buy and own with the manifest condition that the natural or existing surface is liable to be changed by the progress of municipal development. All such owners have equal rights neither lessened nor increased by priority of improvement, and the primary right of each owner is to protect himself and his lot from loss or inconvenience from the flow of surface water. . . The owner cannot be coerced as to time or manner of improvement by risk of having put upon him the burden of providing for the flow upon others."

In *Kunkle v. Ford City Borough*, 316 Pa. 571, 175 A. 412, it was again held that a municipality was not liable for damage resulting from a municipal improvement causing a flow of water onto the plaintiff's land.

In the recent case of *Lucas v. Ford*, 363 Pa. 153, 155, 156, 69 A. 2d 114, 116, it was once again stated that "The owner of upper land has the right to have surface waters flowing on or over his land discharged through a natural water course onto the land of another, . . . He may make proper and profitable use of his land even though such use may result in some change in quality or quantity of the water flowing to the lower land : . . . . From those rules it is clear that only where the water is diverted from its natural channel or where it is unreasonably or unnecessarily changed in quantity or quality has the lower owner received a legal injury."

The same principle was enunciated in *Markle v. Grothe*, 102 Pa. Superior Ct. 90, 156 A. 585, where the authorities were reviewed and it was held that the owner of property on a higher level than that of a neighbor had a right in conducting a brick business on his

property to make excavations thereon in order to get clay for bricks, even though this resulted in accumulations of surface water which subsequently flowed onto the neighbor's land.

Freedom from liability in such cases applies even where alluvial soil and the offscourings of the land of a dominant owner, following the making of improvements, are carried along with the flow of the surface drainings and deposited on the land of a servient owner: *Tess v. Charleroi Home Building Co.*, 96 Pa. Superior Ct. 505.

It is only where the owner of the higher land is guilty of negligence which causes unnecessary damage to the servient owner, or where, by an artificial channel, he collects and discharges surface waters in a body or precipitates them in greatly increased quantities upon his neighbor, that the latter may recover for any damage thereby inflicted: *Miller v. Laubach*, 47 Pa. 154; *Rhoads v. Davidheiser*, 133 Pa. 226, 19 A. 400; *Meixell v. Morgan*, 149 Pa. 415, 24 A. 216; *Pfeiffer v. Brown*, 165 Pa. 267, 30 A. 844; *Rielly v. Stephenson*, 222 Pa. 252, 70 A. 1097; *Morton v. Dormont Borough*, 334 Pa. 283, 5 A. 2d 803; *Lucas v. Ford*, 363 Pa. 153, 69 A. 2d 114; *Wilson v. McCluskey*, 46 Pa. Superior Ct. 594. In the present case, according to the findings of the court, it does not appear that any of the circumstances which would thus impose liability upon the dominant owner is present. Accordingly, regrettable as it may be that plaintiffs suffered damage as the result of the operations carried on by defendant for the improvement of his land, it is an injury which they must accept as one of the unavoidable burdens of community, and especially urban, life.

Decree affirmed at cost of appellants.