## Smith et ux. v. Aricson et al.

*Taras M. Wochok*, for plaintiffs.
*James L. Hollinger*, for defendants.

HONEYMAN, *J.*, August 28, 1974—Plaintiffs, landowners, instituted this suit to permanently enjoin defendants from diverting surface waters from their land to the land of plaintiffs, and to compel defendants to take or pay for whatever steps are necessary to prevent the future flooding of plaintiffs' land.

Defendants filed an answer praying that plaintiffs' complaint be dismissed and their prayer for relief denied, and alleged in new matter that defendants had agreed to make certain changes in the topography of the land without admitting liability, and that the agreement constituted an accord and satisfaction. In a reply to new matter, plaintiffs denied that the changes made in the topography of the land corrected the condition and denied the accord and satisfaction as a matter of law. Trial was held, and all briefs have been filed with the undersigned judge who was the chancellor. The following adjudication is therefore entered.

## FINDINGS OF FACT

1. Plaintiffs are Charles S. Smith and Wilda S. Smith and reside at 2041 West Main Street, West Norriton Township, Montgomery County, Pa. Plaintiffs acquired title to the premises known as 2041 West Main Street by deed dated August 19, 1948. Plaintiffs' property has erected upon it plaintiffs' residence and place of business and has been improved with a lawn area and an abandoned tennis court. There is a creek to the rear of plaintiffs' property which is parallel to but does not cross nor abut plaintiffs' premises. This creek exists on property now owned by defendants. The property has 59 feet frontage with a depth of 320 feet.

2. Defendant Louis H. Aricson is the owner of property located at 2049 West Main Street, West Norriton Township, Montgomery County, Pa., and west of plaintiffs' property. Defendant acquired this property by deed dated June 29, 1967.

3. Defendant Aricson Volkswagen, Inc. (hereinafter company) is a Pennsylvania corporation which is the tenant of defendant of the westerly property, and also is the owner of property located at 2033 West Main Street, West Norriton Township, Montgomery County, Pa., and to the east of plaintiffs' property. Defendant company acquired this property from defendant sometime after May 3, 1968.

4. After defendant first acquired the property, defendant company made an addition to an existing building on the property in order to use it for the sale of new cars. Defendant company also blacktopped a parking lot adjacent to the improved building. Defendant company then constructed a building for the sale of used cars and blacktopped another parking area for the parking of used cars.

5. Plaintiffs' property is bounded on either side and to the rear by property of defendants and is bounded to the front by West Main Street. Plaintiffs' property is approximately one to one and one-half feet below the surrounding land so that it is shaped like a saucer.

6. In the earlier 1960's, plaintiffs first experienced the receipt of quantities of surface water onto the rear 125 feet of their property (not affecting the dwelling house and business establishment) after defendant's predecessor Volkswagen dealer occupied the property to the west of plaintiffs' property.

7. All these properties are subject to a commer-

cial zoning classification to a depth of 200 feet, with the rearmost portions classified as residential.

8. Defendants diverted the creek located on their property so as to permit defendants to make parking facilities on the property. Defendant company constructed a road to the rear of plaintiffs' property for the purpose of access between the two parcels. In addition, defendants constructed a drainage pipe near the rear of plaintiffs' property for the purpose of carrying water away from plaintiffs' property. Defendants also installed curbing along the east side of plaintiffs' property to avoid surface water drainage from the blacktopped parking lot of defendants' property onto plaintiffs' property.

9. In times of heavy rain, water accumulates on the public highway in front of defendant company's property. Despite defendants' efforts and because of insufficient drainage passing under the public highway from defendant company's property to the other side of the road, the water which flows into the area backs up to the point where it flows backwards along the drainage pipe installed by defendant and onto plaintiffs' property. In addition, water is channeled at the end of the curbing installed by defendant onto the connection road constructed by defendant and ultimately onto plaintiffs' property. However, the curbing effectively prevents water from flowing directly onto plaintiffs' property along its easterly boundary.

10. Plaintiffs' property has received substantial quantities of surface water on approximately 12 occasions during and after extraordinarily heavy rainstorms. This water varied from four to 18 inches on the rear of the property, which is used for garden purposes and this water has run off, in each instance, in approximately one-half day.

11. Defendants did not alter the elevation of their property to the east of plaintiffs' property; they did not alter the property to the west from its condition when acquired from the previous Volkswagen dealer except for building alterations and additions which have no bearing on the problem underlying this action; defendants did nothing which would constitute an unreasonable concentration of water to be disgorged upon plaintiffs' property.

## DISCUSSION

Plaintiffs commenced this action in order to enjoin defendants from diverting surface water from defendants' land to that of plaintiffs. Plaintiffs assert that defendants, as a result of blacktopping and curbing defendants' land, have caused flooding and water damage to plaintiffs' property. Defendants, on the other hand, claim that any diversion of water onto plaintiffs' land was not unreasonably caused by the improvements on their property and that such improvements were within limits of that to be expected on urban property and caused no unnecessary damage to plaintiffs' land. The chancellor concludes that defendants are correct.

The legal liability of landowners with respect to surface waters has been held to lie only where "the owner of the higher land is guilty of negligence which causes unnecessary damage to the servient owner, or where, by an artificial channel, he collects and discharges surface waters in a body or . . . in greatly increased quantities upon his neighbor . . .": Chamberlin v. Ciaffoni, 373 Pa. 430, 437 (1953). This court has refined this test and the chancellor finds that the four elements set out in Baker v. Netherwood Corp., 86 Montg. 281 (1966),

fairly embrace plaintiffs' burden in this case. They are:

(1) a diversion of surface waters from their natural course;

(2) an unreasonable change in quantity or quality of the water;

(3) a concentration and precipitation of water upon plaintiffs' property through the use of artificial drains or channels; and

(4) damage to plaintiffs' property which could have been avoided by reasonable care and expenditure.

As to the first two elements, the chancellor is convinced that plaintiffs have met their burden. There is no question in this case but that plaintiffs' land has been flooded by large quantities of water flowing from defendants' land, and that these waters, especially those flowing from West Main Street in times of heavy rain, have been diverted from their natural course in that if the public drainage was adequate the waters would flow across the street from defendants' property instead of across defendants' land and onto plaintiffs' land. However, this situation cannot be materially attributed to the conduct or actions of defendants.

Plaintiffs argue that the parking lots and driveways on defendants' property, as well as the drainage pipe, act as "artificial channels" that carry water from defendants' land to that of plaintiffs, and that they, therefore, meet the requirements of the third element. The chancellor finds it unnecessary to resolve this problem in light of the fact that defendants have exercised care and prudence in attempting to avoid damage to plaintiffs' property and all efforts have failed. Defendants have ex-

pended $1700 to correct plaintiffs' water problem at the direction of plaintiffs and their engineers. This was done without the necessity of litigation and in a cooperative manner. These improvements consisted of the curbing and drainage pipes. Ironically, neither has served to alleviate the problem in times of heavy rain, and the chancellor is convinced that this is because of the drainage problems of the entire area. Suffice it to say that the "saucer-like" shape of plaintiffs' property and the inadequate public drainage under West Main Street cause the flow of surface water onto plaintiffs' land. Plaintiffs ask the court to compel defendants to expend the additional sum of $1554 for the raising of plaintiffs' land by the installation of fill thereon. This proposal had not heretofore been presented to defendants by either plaintiffs or their engineers. The chancellor will not compel defendants to expend additional sums to correct plaintiffs' water problems until plaintiffs happen to hit upon the correct solution. There is no duty nor responsibility on defendants to elevate plaintiffs' property. The major portion of the problem about which plaintiffs complain is attributable to the natural topography of their land as well as the ineffective highway drainage system.

## CONCLUSIONS OF LAW

1. Defendants have not acted unreasonably with respect to surface water drainage onto plaintiffs' property.

2. Defendants have not unreasonably concentrated and disgorged surface water upon the property of plaintiffs.

3. Plaintiffs are not entitled to an injunction enjoining defendants from diverting surface waters off their land onto that of plaintiffs.

4. Defendants shall not be compelled to alter their property in any way to prevent diversion of waters to plaintiffs' land, nor shall defendants be required to compensate plaintiffs for any steps taken by plaintiffs to alleviate surface water drainage problems.

## DECREE NISI

And now, August 28, 1974, it is ordered, adjudged and decreed that plaintiffs' complaint be dismissed. The prothonotary shall give notice to counsel of the filing of this adjudication and decree nisi, and that, unless exceptions are filed within 20 days after such notice, the decree nisi will become the final decree upon praecipe.