## Catherine Pfeiffer, Appellant, *v.* J. L. Brown et al.

*Waters—Right of flowage—Change of natural conditions—Expense of preventing damage—Charge of court.*

The right of the upper landowner to discharge water on the lower lands of his neighbor is in general a right of flowage only in the natural ways and natural quantities. If he alters the natural conditions so as to change the course of the water, or to concentrate it at a particular point, or by artificial means to increase its volume, he becomes liable for any injury caused thereby.

Where a landowner, by drilling a well and pumping, increases the aggregate quantity of water discharged, concentrates it at an artificial point of flow, and changes its character from fresh to salt, thereby injuring the lands of an adjoining owner, he is liable for the injury, if he could have avoided inflicting it by reasonable care and expenditure.

In such a case if the expense of preventing the damage is such as practically to counterbalance the expected profit or benefit, then it is clearly unreasonable, and beyond what the person drilling the well could justly be called upon to assume.

If on the other hand, however large in actual amount, it is small in proportion to the gain to himself, it is reasonable in regard to his neighbor's rights, and he should pay it to prevent the damage, or should make compensation for the injury done.

Between these two extremes lies a debatable region where the cases must stand upon their own facts, under the only general rule that can be laid down in advance, that the expense required would so detract from the purpose and benefit of the contemplated act, as to be a substantial deprivation of the right to the use of one's own property. If damage can be prevented short of this it is an *injuria* which will sustain an action.

A proper standard of estimating damage in such a case is not given to the jury where the court charges that if the injury could have been avoided "at slight expense, or "at small expense," it was the duty of defendants to make such expenditure.

Argued Oct. 16, 1894. Appeal, No. 202, Oct. T., 1894, by plaintiff, from judgment of C. P. Butler Co., March T., 1894, No. 14, on verdict for defendants. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Trespass for injury to land. Before GREER, P. J.

At the trial, plaintiff claimed to recover damages for the alleged wrongful action of defendants in turning salt water from an oil well on an adjoining farm over and upon her land.

The testimony showed that the salt water was pumped up with the oil from the hundred-foot formation into a storage tank and then drawn off and allowed to flow by a natural depression over plaintiff's land. After it began to flow upon plaintiff's lands, she caused a ditch to be plowed along the line of depression, and the salt water then flowed in the ditch to a neighboring brook, and thereafter it caused her no damage.

The court charged in part as follows :

" [The defendants had a right to drill as many wells on the land as they saw fit and to drill where they saw in their own interest it was best to drill them, and if in operating these wells honestly and carefully the salt water or oil or anything else that might come from the wells flowed the natural course and went into the streams, there can be no damages collected from them.] [5] It is true the law in most cases provides for injury, but if there is an injury for which they are not responsible the law does not provide a remedy. In this case the defendants had a right to drill this oil well ; if the fresh water and salt water came out with the oil, that was not their fault and they are not to blame if there was no negligence or malice on their part; if there was any way by which they could prevent the water flowing on Mrs. Pfeiffer it was their duty to do it ; [when the water comes to the top of the ground and is separated from the oil by the siphon and taken from one tank to another, and the water is let out of the tank and the water flows the natural course, that is no fault on their part and they would not be liable in damages unless there is some way by which they can prevent the flowing of the water at reasonable expense.] [6] It is the duty of defendants, if possible, to save the property and lands of others adjoining, and the law makes it the duty of Mr. Brown and his fellow defendants to, if possible, prevent the flow on the land of Mrs. Pfeiffer if they can do so without unreasonable expense ; if they cannot do so, then all he can do is to let the water take its course. This is an action of trespass and the burden of proof is on the plaintiff ; the plaintiff must show to you malice or negligence on the part of the defendants before she can recover ; the mere fact of the water running away would not be malice, neither would it be negligence if there was no way by which Mr. Brown and the defendants can prevent it; [they must pre-

vent it, if they can prevent it without putting it on the lands of other people, if they can do so without unreasonable expense or inconvenience;] [7] if they ran this water off the natural course and it would do damage to other persons, then these other persons would have no trouble collecting damages, because there was a change of the natural course and the parties injured would have a right to collect damages off them for whatever wrong or damages resulted therefrom; [before the plaintiff can recover she must show that Mr. Brown and the other defendants could, by a reasonable outlay of money or by reasonable expense, have taken this water some other place and not have hurt some other person, and if that is not proven the verdict must be for the defendants.] [8] It has been stated by the plaintiff that this tank could have been raised higher and the water taken down the other way and turned on the public road and let run down there and in that way kept off this ground. Was that practicable? Could that be done? [I want to say that the public road is for persons to pass and travel on. It ought to be kept clean, and the people have no right to deposit filth on it.] [9] You heard the proof of the witnesses that they could have cut down the ground and put the tanks above the derrick and have pumped the oil into the tank, this is a question for you. Before you go into the measure of damages you must find that the defendants were negligent or acted with malice. [They had a right to let the water take its own course; they had a right to separate the water from the oil and pour it out on their ground, and if it ran down on Mrs. Pfeiffer's land, that is not their fault. They have no right to spend more in saving it than the amount of damages; they would have no right to spend two or three hundred dollars in order to turn the water and save her fifty or seventy-five or a hundred dollars in damages.] [10] Unless you find negligence or malice on the part of the defendants your verdict must be for the defendants. [If they simply turn the salt water in the natural way and do all they can to prevent damage, your verdict must be for the defendants,] [11] but if you find that they have not done what they could have done, that they could have turned it in another course, at reasonable expense, without hurting any other person, they would be bound to do so; they cannot consume this water. Before

you find for the plaintiff you must find them guilty of malice or negligence, and negligence is understood as absence of reasonable care. Did defendants take reasonable and ordinary care? If they did, then they are not liable in this action. The plaintiff claims damages for four apple trees worth twenty-five dollars each; you heard the evidence, it is for you to say, it is for you to find the facts. Should you find negligence or malice on the part of defendants, you measure how much this damaged her and compensate her for it. It is argued to you that the defendants have not shown how the trees were killed. The defendants are not bound to show that until the plaintiff shows that the salt water killed them; the law puts the burden of proof on the plaintiff, and because the trees died and the salt water ran down there, the defendants are not bound to show that they died from something else; then comes the grass. Take this case and dispose of it according to the proof; [you must find that the defendants acted maliciously or negligently before you can find a verdict for the plaintiff.] " [12]

Plaintiff's points were as follows:

" 1. If the jury believe the defendants could have conducted salt water away from their lease so that it would not run over Mrs. Pfeiffer's property, they were bound to do so notwithstanding it would have involved them in a certain amount of trouble and expense, and if they failed in this your verdict must be for the plaintiff for the amount of injury you find she has sustained under all the evidence. *Answer:* If this point had read ' if they can run it off Mrs. Pfeiffer and not on some other person's land' we might affirm it with slight qualification, but the defendants have no right to run it on some other person's land. If you believe that the damage resulted from the salt water, we affirm it. You must believe that the damage resulted from the salt water and that the defendants could have taken this salt water off at slight expense without putting it on some other man's land." [3]

" 2. The law makes it the duty of every man so to handle and manage his property as to inflict no damage on his neighbor's property beyond that which is absolutely unavoidable, and if the jury believe the defendants could have avoided injuring plaintiff's property by piping or ditching the salt water away from their well and tanks, they were bound to do so, and if

they failed in this duty to their neighbor—the plaintiff—they must respond in damages. *Answer :* The defendants were not bound to pipe or ditch this salt water over Mrs. Pfeiffer's land. As I said before, they are bound to take reasonable and ordinary care to do her no damage that could be avoided by them ; they were not bound to ditch it over her land; and if they could have piped or ditched it some other place to injure no other person at small expense, it was their duty to do so, but they had no more right when this water reached them to ditch over her land than she had, because her land was servient to their land." [4]

Verdict and judgment for defendants.

*Errors assigned* were (1, 2) rejection of evidence, not considered ; (3–12) above instructions, quoting them.

*W. H. Lusk,* for appellant.—Under the doctrine of Collins v. Gas Co., 131 Pa. 143 and 139 Pa. 111, if defendants had any reason to anticipate that the salt water rising in their well would injure plaintiff's property they were bound to guard against it by casing or any other means in their power.

The great distinction between this case and the Sanderson case is that here there was no natural water course to carry off the salt water from appellee's lease, and if there had been no injury would have been complained of.

If the proprietor of the higher land alters the natural condition of his property and collects the surface and rain water together at the boundary of his estate and pours it in a concentrated form and in unnatural quantities upon the land below, he will be responsible for all damages thereby caused to the possessor of the lower lands : Addison on Torts, Wood's ed. of 1880–81, § 82, notes 2, 3 ; Ib. §§ 84, 89, 95.

Whatever difference exists between the facts of the Collins case and our own, we think is in our favor. In the former the injury commenced when the well was not half completed and was all done underground and out of sight. Nothing but the results of the injury were visible on the surface and the cause or source was a mere matter of inference and deduction.

While the owner of the property is without legal redress for the effect, upon its desirability and its market value, of the

mere proximity of an undesirable business, yet if the business is so conducted as to affect the use of his property or the health of its occupants, these tangible and substantial injuries, capable of measurement by a pecuniary standard, will sustain an action for damages : Robb v. Carnegie, 145 Pa. 324.

An action will lie to recover damages for obstructing the natural flow of water whereby it is prevented from discharging from plaintiff's lands on to defendant's lands: Glass v. Fritz, 142 Pa. 324.

A municipal corporation is liable for changing, by the digging of ditches for that purpose, the natural course of the water collecting on its streets, and thereby throwing it on the land of a private owner: Weir v. Plymouth Borough, 148 Pa. 566.

An owner of a mine who deposits culm and refuse from his mines in a stream or in a place where ordinary floods will carry it down upon the lands of others is liable for the injury that his neighbor may suffer therefrom : Elder v. Coal Co., 157 Pa. 490.

Where plaintiff was the owner of two lots, one on each side of an oil well, and on each lot was a fresh water well, having proved that the latter were injured by the drilling of an oil well, the lower court held that if defendants did not do something to prevent the streams feeding the water wells from being drained off from said wells they were guilty of negligence and plaintiff was entitled to recover.   Upon appeal this court held these instructions to be free from error: Steele v. Todd, 158 Pa. 515 ; See also Penna. Lead Co.'s Ap., 96 Pa. 126.

That portion of the charge embraced in the fifth assignment of error is erroneous inasmuch as it makes no distinction between the artificial product, salt water, and the natural product, surface water.

*W. D. Brandon,* for appellee.—The court, instead of giving binding instructions to find for defendants, as requested, for there was not sufficient evidence to sustain a verdict if given for plaintiff, submitted the testimony to the jury and by their verdict they have found that defendants were not negligent nor actuated by malice and that the injury was not preventable by reasonable care and expense.   Her case was not within any of the exceptions.   The authorities cited by plaintiff are all cases of exceptions to the rule.

The burden was on plaintiff to show that the injury was preventable by reasonable care or expense.

OPINION BY MR. JUSTICE MITCHELL, Jan. 7, 1895 :

The right of the upper landowner to discharge water on the lower lands of his neighbor is in general a right of flowage only in the natural ways and natural quantities. If he alters the natural conditions so as to change the course of the water, or concentrate it at a particular point, or by artificial means to increase its volume, he becomes liable for any injury caused thereby : Addison on Torts, sect. 283, ed. 1891.

In the present case the defendants, by drilling a well and pumping, increased the aggregate quantity of water discharged, concentrated it at an artificial point of flow, and changed its character from fresh to salt, whereby it became more injurious to plaintiff's land. Prima facie therefore they were liable in this action and the burden of proof was on them to show some reason why the general rule should not apply. This they endeavored to do by the claim that the water was discharged in the lawful and proper use of their own land. The exception is well established and is thus expressed in the strongest authority in its favor, Penn. Coal Co. v. Sanderson, 113 Pa. 126, " every man has the right to the natural use and enjoyment of his own property ; and if while lawfully in such use and enjoyment without negligence, an unavoidable loss occurs to his neighbor, it is damnum absque injuria." But this, as was shown in Collins v. Chartiers Valley Gas Co., 131 Pa. 143, does not go beyond proper use and unavoidable damage. It was accordingly said in the latter case that " the use which inflicts the damage must be natural, proper, and free from negligence, and the damage unavoidable. . . . Hence the practical inquiry is, first, whether the damage was necessary and unavoidable ; secondly, if not, was it sufficiently obvious to have been foreseen, and also preventable by reasonable care and expenditure ? "

This brings us to the consideration of what is meant by reasonable care and expenditure. In the Chartiers case it was said in the charge that the jury might have found that if the defendants had exercised any reasonable judgment, or investigated or paid attention to it, they would have known that the injury to the plaintiff would follow, and with the outlay of a

small amount of money might have prevented it. These remarks appear to apply equally to the present case. On the facts shown it could hardly be contended that the injury was unavoidable. The very simple device resorted to by the plaintiff obviated it, and there was evidence from which the jury not only might but should have found that defendants should have foreseen the result of their operations and provided against it. In regard to what is a reasonable expense in this connection, neither in the Chartiers nor any of the other cases has it been necessary to define it strictly, but it is clear from all of them that the word reasonable is not to be taken in a narrow sense. It is not to be lost sight of that the defendant's right to injure another's land at all, to any extent, is an exception, and the burden is always upon him to bring himself within it. And his exception is founded on necessity and because otherwise he would himself be deprived of the beneficial use and enjoyment of his own land. Unless that would be the substantial result of forbidding his action, he is not within the immunity of any of the cases. And the expense which will absolve him from the duty of preventing the injury must come substantially up to the same standard. If the expense of preventing the damage from his act is such as practically to counterbalance the expected profit or benefit, then it is clearly unreasonable, and beyond what he could justly be called upon to assume. If on the other hand, however large in actual amount, it is small in proportion to the gain to himself, it is reasonable in regard to his neighbor's rights, and he should pay it to prevent the damage, or should make compensation for the injury done. Between these two extremes lies a debatable region where the cases must stand upon their own facts, under the only general rule that can be laid down in advance, that the expense required would so detract from the purpose and benefit of the contemplated act, as to be a substantial deprivation of the right to the use of one's own property. If damage could have been prevented short of this it is injuria which will sustain an action.

In regard to the somewhat analogous right of eminent domain over a public franchise previously existing—a right resting on the same basis of necessity,—it was said in Pittsburg Junction R. R. Co.'s Appeal, 122 Pa. 511, 531 : " The location claimed for defendant is a matter of economy, not of necessity.

It can construct its road and reach its terminus by another route. It is true it would be expensive, but it is a mere question of money and engineering skill. It is not entitled to run through plaintiff's yard, and cripple its facilities for handling its business, merely to save money," and further quoting from Penn. R. R. Co.'s Appeal, 93 Pa. 150, there " must be a necessity that arises from the very nature of things, over which the corporation has no control; it must not be a necessity created by the company itself for its own convenience, or for the sake of economy." While it is not meant to be said that this standard should be enforced without qualification, against private rights to the natural use of property, it nevertheless illustrates the basis of necessity on which the exercise of such rights to the damage of another without compensating him, must rest. Each party has clear rights to the use and enjoyment of property, and each must concede something for the preservation of the other. Where conflict is irreconcilable the right to use one's own must prevail, but it can only do so without compensation where the resulting damage is not avoidable at all, or only at such expense as would be practically prohibitory.

In the charge and answers to several of the points the learned judge used the expressions " at slight expense," " at small expense " etc. in reference to the duty of defendants to prevent the salt water from flowing on plaintiff's land. This was not giving the jury a proper standard.

Judgment reversed and venire de novo awarded.