**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 18-1137
_____

MD MALL ASSOCIATES, LLC,
t/a MacDade Mall Associates LP

v.

CSX TRANSPORTATION, INC.

MD MALL ASSOCIATES, LLC,
                                        Appellant

_____

On Appeal from United States District Court
for the Eastern District of Pennsylvania
(District Court No. 2:11-cv-04068)
District Judge: Honorable Juan R. Sanchez

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
December 11, 2018

_____

Before: SMITH, *Chief Judge*, McKEE, and FISHER, *Circuit Judges*.

(Opinion filed: September 18, 2019)

_____

OPINION*

_____

* This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

McKEE, *Circuit Judge*.

MD Mall Associates, LLC appeals the District Court's judgment following a bench trial in favor of Defendant CSX Transportation, Inc., which dismissed MD Mall's attempt to hold CSX liable for damage to its downhill property caused by storm water runoff. For the reasons that follow, we will affirm.

I.[1]

In his exceedingly thorough and well-reasoned opinion, Chief Judge Sanchez explained the Court's conclusion that MD Mall had failed to sufficiently answer the most central question for a liability determination—whether the installation of the railroad and right-of-way owned by CSX altered or changed storm water flow patterns.[2] MD Mall now argues that the District Court misapplied Pennsylvania storm water law, the doctrine of damnum absque injuria, trespass standards, and negligence standards. We disagree and need only summarize the District Court's analysis.

Trespass liability is established under Pennsylvania law based on a landowner's control, collection, and shifting of surface water from one location to another, via an

---

[1] The District Court had jurisdiction pursuant to 28 U.S.C. §1332. We now have jurisdiction pursuant to 28 U.S.C. §1291. We review a district court's factual findings for clear error and its legal conclusions de novo. *See VICI Racing, LLC v. T-Mobile USA, Inc.*, 763 F.3d 273, 282–83 (3d Cir. 2014).
[2] *MD Mall Assoc., LLC v. CSX Transp., Inc.*, 288 F. Supp. 3d 565, 588 (E.D. Pa. 2017).

artificial channel.[3] Pennsylvania common law recognizes the "right of flowage"[4]—the right of an upper-landowner to have the surface waters flowing on their land to be discharged through the "natural water course" onto the land of another.[5] However, "an upper landowner is liable for the effects of surface water running off his property in two distinct circumstances: (1) where the landowner has diverted the water from its natural channel by artificial means; or (2) where the landowner has unreasonably or unnecessarily increased the quantity or changed the quality of water discharged upon his neighbor."[6] The railroad was constructed in the late 1800s, before the upgradient residential development was constructed, decades before the Mall was constructed, and a century before the flooding problem arose. As the District Court concluded:

> There is no evidence as to whether the high point on the north side of the right-of-way, which blocks water from the right-of-way from flowing down the Mall hill, existed when the track was constructed in the late–1800s, or that CSX created the high point. Nor is there any evidence that CSX or its predecessor did anything to change the natural grade of the land along the length of the right-of-way.[7]

The court, thus, concluded that the Mall had not shown that CSX or its predecessor

---

[3] *Rau v. Wilden Acres, Inc.*, 103 A. 2d 422, 424 (Pa. 1954).

[4] *Pfeiffer v. Brown*, 30 A. 844, 845 (Pa. 1895). Pennsylvania courts have addressed the right of flowage in the context of railroads by explaining that where the diversion of water onto adjacent land is "the necessary consequence of the construction and maintenance" of a railroad, a lower landowner can only recover with a showing of negligence in the construction or maintenance of the rail. *Flaherty v. Pittsburgh, Cincinnati, Chi. & St. Louis Ry. Co*, 63 Pa. Super 622, 623 (Pa. Super. Ct. 1916).

[5] *Shamnoski v. PG Energy, Div. of S. Union Co.*, 858 A.2d 589, 605 (Pa. 2004) (quoting *Lucas v. Ford*, 69 A.2d 114, 116 (Pa. 1949)).

[6] *Bretz v. Cent. Bucks Sch. Dist.*, 86 A.3d 306, 316 (Pa. Commw. Ct. 2014) (continuing trespass); *LaForm v. Bethlehem Township*, 499 A.2d 1373, 1383 (Pa. Super. Ct. 1985) (negligence).

[7] *See MD Mall Assocs., LLC* 288 F. Supp. 3d at 588.

artificially channeled water from the right of way onto the Mall property.[8]  Moreover, the District Court correctly held that MD Mall had not established that the railroad was constructed in a matter that diverts water from its natural channel.

MD Mall incorrectly argues that the District Court misapplied the doctrine of damnum absque injuria. The doctrine provides an alternate liability shield for upper landowners.[9] The District Court relied on long established Pennsylvania law to explain why the doctrine precluded MD Mall's recovery.[10] "Where the diversion of water onto the adjacent land is 'the necessary consequence of the construction and maintenance of the road, a[n] [adjacent] landowner cannot recover in the absence of anything to show that the railroad company has been guilty of some unlawful act or of negligence in the construction and maintenance of its line.'"[11]

Finally, as the District Court explained, MD Mall has not established that CSX was negligent and a landowner only has a duty to control surface area water where one of the two right of flowage exceptions is met.[12]  MD Mall failed to sufficiently establish that

---

[8] *See MD Mall Assoc.*, 288 F. Supp. 3d at 590-91 (finding that the "Mall has not established that CSX has a duty" and setting out other evidentiary lacunae). Nor did the Mall contend that the District Court's evidentiary findings on the negligence claim were clearly erroneous.

[9] Under this doctrine an upper landowner can avoid liability, even if s/he changed the property, if the damage to a lower landowner caused by storm water flow occurred based on a lawful, non-negligent use of property, and the damage was unavoidable. *See e.g., Pfeiffer*, 30 A. at 845; *Pennsylvania Coal Co. v. Sanderson*, 6 A. 453, 457 (Pa. 1886).

[10] *See MD Mall Assoc.*, 288 F. Supp. 3d at 585.

[11] *Id.* at 586 (quoting *Flaherty*, 63 Pa.Super. at 623).

[12] *LaForm*, 499 A.2d at 1378. "[W]here the factors of artificial diversion or unreasonable or unnecessary increase are not present," however, "a landowner is under no duty to tame

4

the water flow patterns in the late 1800s prior to installation of the railroad and right-of-way.[13]

## II.

For the foregoing reasons, we will affirm the decision of the District Court. [14]

---

the surface waters flowing over his land." *Id.* at 1383. *See also MD Mall Assoc.,* 288 F. Supp. 3d at 585–86.

[13] *See MD Mall Assoc.,* 288 F. Supp. 3d at 590-91 (finding that the "Mall has not established that CSX has a duty" and setting out other evidentiary lacunae). Nor did the Mall contend that the District Court's evidentiary findings on the negligence claim were clearly erroneous.

[14] CSX also argued that MD Mall's claims were preempted by the Federal Railroad Safety Act and the Interstate Commerce Commission Termination Act, and the District Court addressed that argument in its opinion. *See MD Mall Assocs.,* 288 F.Supp.3d at 591. However, since we agree that CSX is not liable to MD Mall, we need not revisit the preemption discussion.