J-A05035-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| KAREN J. THOMPSON, TRUSTEE OF THE THOMPSON FAMILY TRUST AGREEMENT | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : | |
| YOUNG SIK KIM | : : | No. 2321 EDA 2022 |
| Appellee | : : : : : : : | |
| APPEAL OF: KAREN THOMPSON | : | |

Appeal from the Order Entered January 24, 2022
In the Court of Common Pleas of Montgomery County
Civil Division at No. 2017-03442

BEFORE:  LAZARUS, J., KUNSELMAN, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.:                    **FILED MARCH 28, 2023**

Karen Thompson (Appellant), as trustee of the Thompson Family Trust, appeals by permission[1] from the order determining the equitable relief awarded to her in this action for trespass, private nuisance, and violation of the Clean Streams Law (35 P.S. §§ 691.1-1001).  We affirm.

The trial court detailed the underlying facts and procedural history as follows:

---

[1] Appellant filed a petition for permission to appeal which the trial court granted on September 20, 2022.

[T]his dispute is between the owners of two parcels of land. The parcel higher in elevation comprises approximately 10 acres, fronting on Welsh Road in Horsham Township, northwest of the intersection of Welsh Road and Mann Road. Welsh Road serves as the boundary between Horsham Township and Upper Dublin Township, which is to the southwest of Welsh Road. The parcel is currently owned by [Appellee Young Sik Kim (Kim)] and is referred to as the Kim Parcel.

The other parcel, lower in elevation, comprises approximately 71 acres, fronting on Mann Road in Horsham Township, northeast of the intersection of Welsh Road and Mann Road, and extending northeast and northwest. The parcel includes a strip of land approximately 50 feet in width, located in the western part of the parcel and running from the northeast to the southwest, providing access to Welsh Road. The parcel is currently owned by the Thompson Family Trust Agreement ("the Trust") and is referred to as the Trust Parcel. [Appellant] is trustee of the Trust. The two parcels share a boundary along the northwest edge of the 50-foot-wide strip and elsewhere along the western boundary of the Trust Parcel.

A third relevant parcel consists of approximately 39 acres, on which is situated the Maple Glen Church and its parking area ("the Church Parcel"). The Church Parcel shares a border with the eastern portion of the Trust Parcel and also lies across the 50-foot-wide strip from the Kim Parcel. Like the Trust Parcel, the Church Parcel is lower in elevation than the Kim Parcel.

\* \* \*

Much of the development affecting the two subject parcels occurred before they were acquired by the parties to this lawsuit. Before the late 1950's, the land in Upper Dublin Township across Welsh Road from the Kim Parcel was undeveloped farmland. In the late 1950's, a housing subdivision was constructed on that land. This development resulted in increased storm water runoff from the Upper Dublin property, which is at a higher grade than Welsh Road and the Kim Parcel. As part of the construction of the subdivision, a culvert was installed under Welsh Road, depositing the storm water runoff onto the Kim Parcel. The natural course of the water from the culvert crossed over the Kim Parcel and across the 50-foot-wide strip onto the Church Parcel. The flow was primarily sheet flow, but with the passage of time, a small swale

or very shallow, meandering channel and a small ephemeral pond appeared on the Kim Parcel.

On April 30, 1990, the Kim Parcel was purchased by Dr. Norman Werther and Ellen Werther, husband and wife. The Werthers installed a wider and deeper defined channel with a bed and banks for the conveyance of the water to a pond that they also constructed. The channel was wholly contained on the Kim Parcel. The pond was partly on the Kim Parcel but the majority of the pond was located within the 50-foot-wide strip that is part of the Trust Parcel. The effect of the channel and the pond was to increase the flow of water runoff from the Kim Parcel and to divert it from the Church Parcel to the Trust Parcel.

At all relevant times prior to December 20, 2010, Natural Lands Trust, Inc. ("NLT"), was the owner of the Trust Parcel.

* * *

On December 20, 2010, the Trust purchased the Trust Parcel from NLT, subject to an Agricultural Conservation Easement established the same date by NLT. At the time of its purchase of the Trust Parcel, the Trust was aware that the pond was situated largely on the 50-foot-wide strip that was part of the Trust Parcel and that it caused an increase in water runoff onto the Trust Parcel.

* * *

On January 9, 2015, [Kim] purchased the Kim Parcel from the Werthers.

* * *

At and after the time of his purchase of the Kim Parcel, [Kim] was aware that the work done by the Werthers had increased the flow of water onto the Trust Parcel. In approximately the summer of 2016, [Kim] made certain changes to the channel, including removing old railroad ties and replacing them with boulders, and to other parts of the Kim Parcel. He did not change the location of the channel or the pond. The evidence is in dispute over whether the changes made by [Kim] aggravated or mitigated the impact of water runoff from the channel and pond onto the Trust Property. It is undisputed, however, that the

- 3 -

changes did not wholly reverse the increased water runoff onto the Trust Property caused by the Werthers' actions.

Trial Court Opinion, 11/15/22, at 1-4 (footnote omitted, capitalization modified).

The Trust commenced this action for trespass, violation of the Clean Streams Law and Storm Water Management Act, private nuisance, public nuisance, and negligence on February 21, 2017. The trial court held a bench trial December 1 - 4, 2020, and issued its decision on February 26, 2021.

> On the Trust's statutory claims, the court determined [Kim] had not developed and implemented an Erosion and Sediment Control Plan in accordance with the requirements of regulations of [the Department of Environmental Protection (DEP)], 25 Pa. Code § 102.4(b). The court held that [Kim] was therefore in violation of the Clean Streams Law. *See* 25 Pa. Code § 102.31. Accordingly, the court held that the Trust was entitled to equitable relief against [Kim] pursuant to section 601(a) and (c) of the Clean Streams Law, 35 P.S. § 691.601(a), (c), to abate his violations and compel compliance with the statute. On the nature of the remedial relief, the court adopted the suggestion of the Trust's counsel by ordering [Kim] to apply to DEP to determine what corrective activity was required. …

> On the common-law claims, the court determined [Kim] was liable to the Trust for equitable relief for trespass and private nuisance. …

> While finding [Kim] liable on these common-law claims, the court held in abeyance the determination of equitable relief on the claims, pending the proceedings before DEP ordered on the Clean Streams Law claim. …

> On March 8, 2021, [Kim] filed a motion for post-trial relief. On March 18, 2021, the Trust filed its own motion for post-trial relief. After briefing, by order dated May 27, 2021, the court denied both motions and entered the relief set forth in the decision as a judgment of the court. Neither party filed an appeal from that judgment.

- 4 -

* * *

On July 14, 2021, [Kim]'s engineer, Mr. [Timothy] Woodrow, submitted to DEP (and also to the Montgomery County Conservation District) an application for adequacy review, in purported compliance with paragraph 2(a) and (b) of the court's order. On July 29, 2021, the Trust filed [a] motion to enforce judgment, to hold [Kim] in contempt, and for sanctions ("the First Motion to Enforce"), asserting that Mr. Woodrow's submission did not comply with … the order. A hearing on the motion was set for September 1, 2021. … The court determined that proceedings on the motion should be held in abeyance pending an informal conference with an appropriate representative of DEP[, which] was held on September 21, 2021, with Christopher Smith, a DEP engineer, in attendance. …

On October 29, 2021, DEP, by its assistant counsel, provided to the parties' counsel by email a DEP status update. …

[On] November 12, 2021, [the Trust filed] a motion to enforce relief and for a hearing pursuant to the May 27, 2021 judgment order of court ("the Second Motion to Enforce"). …

*Id.* 6-9 (footnotes omitted, capitalization modified).

On January 11, 2022, the trial court conducted a hearing on both motions to enforce. Gregory Charles Newell, Appellant's engineer, and Mr. Woodrow, Kim's engineer, both testified.

Mr. Newell testified that the proper abatement measure would be to install a new stormwater management basin on the Kim Parcel near the outlet of the culvert running from Upper Dublin Township under Welsh Road and to fill in the channel and pond that the Werthers had installed. This was the same plan that Mr. Newell had proposed during his testimony at the four-day trial. At that time, he had estimated the cost of implementing the plan as $583,000. (Ex. P-75, p. 11; Tr. 12/3/20, at 13-14.) On cross-examination, Mr. Newell testified that he had not considered dredging the pond as a potential remedy. (Tr. 1/11/22, at 48.)

* * *

Mr. Woodrow, on behalf of [Kim], had a very different opinion. He testified that no remediation was necessary to address the increased water flow from the Kim parcel — a conclusion that was clearly at odds with the findings in the court's decision. But he also proposed, as an alternative, that the pond be dredged and that other alterations to the pond be made. … Mr. Woodrow further testified that he had not yet prepared a design or specifications for such work. (Tr. 1/11/22, at 139.)

*Id.* at 10-12.

On January 24, 2022, the trial court issued a decision which provided:

[Kim] will be ordered to promptly dredge or deepen the pond that straddles the parties' properties and to modify the associated outlet structures, spillway, and berm, so as to achieve the maximum feasible reduction of water flow from [Kim's] property onto [Appellant's] property, in accordance with the following procedure:

(a) The parties, through their respective engineers, shall engage in a cooperative and collaborative process to reach agreement on the nature, scope and design of the work to be performed. The agreement shall be set forth in a writing (including sketches, plans, or other graphic materials) acceptable to both engineers. Upon the entry of such agreement, [Kim] shall proceed with the agreed work as promptly as feasible.

(b) In the event that the parties, through their respective engineers, cannot reach agreement in accordance with subparagraph (a) above, each party shall submit to the court, on a date agreed upon by the parties, a written report stating the work proposed by that party's engineer, explaining the reasons for such proposal, and explaining any objection to the proposal of the opposing party's engineer. Within ten (10) days after the submission of such reports, each party may submit a rebuttal report by that party's engineer. Upon review of such reports, and after such further proceedings, if any, that the court considers

- 6 -

> necessary, the court will determine the work to be performed.

Trial Court Opinion, 11/15/22, at 14.

On January 31, 2022, the Trust filed a motion seeking reconsideration. The court denied reconsideration on February 10, 2022. Appellant timely appealed.[2]

Appellant presents the following issues:

1. Did the trial court abuse its discretion and commit manifest errors of law by issuing and entering its January 24, 2022 memorandum and order, reversing, or materially deviating from and nullifying, the court's February 26, 2012 decision, later affirmed by its May 27, 2021 judgment order[?]

2. Did the trial court therefore commit abuses of discretion and manifest errors of law by entering its January 24, 2022 memorandum and order denying Appellant's relief request in the Trust's November 12, 2021 motion to enforce relief and for a hearing pursuant to the May 27, 2021 judgment order?

3. Did the trial court therefore commit abuses of discretion and manifest errors of law by: (1) creating an artificial, subjective standard for determining an acceptable volume of unnaturally channeled water *i.e.* "maximum feasible reduction" reversing the standard of [***Kowalski v. TOA PA V, L.P.***, 206 A.3d 1148 (Pa. Super. 2019)] ("however slight") and (2) refusing to reinstate, and enforce against [Kim] without limitation, the full and complete abatement relief awarded Appellant by the court, as intended, in its February 26, 2021 [decision] as affirmed by its May 27, 2021 judgment order?

---

[2] The trial court viewed the order as "arguably appealable as of right." ***Id.*** at 15, n.6. However, as previously noted, the court granted Appellant permission to appeal. Order, 9/20/22. Appellant and the trial court have complied with Pa.R.A.P. 1925.

4.     In [its] November 15, 2022 opinion, did the trial court *sua sponte* and without attribution, improperly interpose a defense of *de jure* authority on behalf of [Kim] with regard to unnaturally channeled water flowing from Upper Dublin Township onto [Kim's] property, to justify less than full abatement relief awarded Appellant rather than require [Kim] to effectuate full and permanent relief in favor of Appellant while yet finding that [Kim] "is still responsible under the law of trespass and private nuisance for the increased runoff that remains[?]"

5.     Should the trial court's January 24, 2022 memorandum and order therefore be vacated, and this matter remanded with instructions to the trial court[?]

Appellant's Brief at 5-9 (modified).

At the outset, we recognize:

When reviewing an equitable decree, our standard of review is limited. "We will reverse only where the trial court [ ] palpably err[ed], misapplied the law or committed a manifest abuse of discretion. Where there are any apparently reasonable grounds for the trial court's decision, we must affirm it." **Viener v. Jacobs**, 834 A.2d 546, 554 (Pa. Super. 2003) (citations omitted).

Moreover,

> The function of this Court on an appeal from an adjudication in equity is not to substitute [our] view for that of the lower tribunal; our task is rather to determine whether "a judicial mind, on due consideration of all the evidence, as a whole, could reasonably have reached the conclusion of that tribunal."

**Hess v. Gebhard & Co., Inc.**, 570 Pa. 148, 808 A.2d 912, 920 (2002) (quoting **Aiken Indus., Inc. v. Estate of Wilson**, 477 Pa. 34, 383 A.2d 808, 810 (1978)). Additionally, we note that "[w]hen reviewing the results of a non-jury trial, we are bound by the trial court's findings of fact, unless those findings are not based on competent evidence." **Viener**, 834 A.2d at 554.

**Kinney v. Lacey**, 252 A.3d 644, 647 (Pa. Super. 2021).

- 8 -

Furthermore,

in Pennsylvania, specialized rules have been developed as to when an upper landowner may be liable for the effects of surface water running off its property. Our Supreme Court has held that, "[b]ecause water is descendible by nature, the owner of a dominant or superior heritage has an easement in the servient or inferior tenement for the discharge of all waters which by nature rise in or flow or fall upon the superior." *Chamberlin v. Ciaffoni*, 373 Pa. 430, 96 A.2d 140, 142 (1953), quoting *Kauffman v. Griesemer*, 26 Pa. 407 (Pa. 1856). Therefore, "an owner of higher land [is] under no liability for damages to an owner of lower land caused by water which naturally flows from the one level to the other." *Chamberlin*, 96 A.2d at 142.

Notwithstanding the above, "[t]he right of the upper landowner to discharge water on the lower lands of his neighbor is, in general, a right of flowage only, in the natural ways and natural quantities." *Pfeiffer v. Brown*, 165 Pa. 267, 30 A. 844 (1895). Thus, if the upper landowner "alters the natural conditions so as to change the course of the water, or concentrate[s] it at a particular point, or by artificial means [ ] increase[s] its volume, he becomes liable for any injury caused thereby." *Id.* In other words, it is "only where the water is diverted from its natural channel or where it is unreasonably or unnecessarily changed in quantity or quality has the lower owner received a legal injury." *Lucas v. Ford*, 363 Pa. 153, 69 A.2d 114, 116 (1949).

*Youst v. Keck's Food Service, Inc.*, 94 A.3d 1057, 1073 (Pa. Super. 2014).

Appellant's argument does not correspond with her statement of questions. *See* Appellant' Brief at 5-48. In addition, Appellant essentially argues a single issue, *i.e.*, that the trial court abused its discretion and committed an error of law by ordering an inequitable remedy. *Id.*

Appellant acknowledges that some of the water runoff onto the Trust property "originates from Upper Dublin Township," not Kim. *Id.* at 30. However, she contends Kim

- 9 -

is liable for full and effective permanent relief in favor of Appellant because of the work done by [Kim] on his property regardless of whether his site work aggravated or diminished the artificial runoff caused by the predecessor owners' site work channeling the Upper Dublin Township unnatural surface water through their property and onto Appellant's property.

*Id.* at 31.

Appellant cites this Court's decisions in ***Kowalski*** 206 A.3d 1148 (Pa. Super. 2019), and ***Morgan v. Millstone Resources Ltd.***, 267 A.3d 1235 (Pa. Super. 2021), to argue:

The fact [Kim] did not build the Upper Dublin Township storm water conveyancing system allowing storm water to flow onto his property "is of no consequence" because his pre-purchase knowledge and property ownership since 2016 renders him liable for the flow of excess surface water onto Appellant's property.

*Id.* at 30-31.

Appellant's reliance on ***Kowalski*** and ***Morgan*** is misplaced. ***Morgan*** held that a defendant who "artificially alters the natural flow of the surface water on his land so as to injur[e] another property" commits trespass and "will be enjoined." ***Morgan***, 268 A.3d at 1249. ***Kowalski*** held that a successor owner can be held liable for his or her predecessor's trespass "if the actor, having acquired his legal interest in the thing with knowledge of such tortious conduct or having thereafter learned of it, fails to remove the thing." ***Kowalski***, 206 A.3d at 1165 (citation omitted). Neither case holds that a defendant landowner can be held liable and required to remedy damage caused by a third, non-party landowner's diversion of water onto the parties' properties.

Instantly, the trial court explained:

> In performing the task of fashioning the appropriate equitable remedy, the [c]ourt had before it two proposals by the parties' two respective engineers. One proposal, by the Trust's engineer, would have gone well beyond remedying the adverse impact on the Trust Parcel caused by the Werthers' installation of the channel and pond, as modified by [Kim]. **That installation diverted water runoff resulting from the land development in Upper Dublin Township onto the Trust Parcel. The Trust proposal, however, would not remedy the effect of the Werther installation so much as it would capture the Upper Dublin water at the point where it entered the Kim Parcel, before it could run downhill either naturally or as diverted.** As Mr. Newell explained, it would catch the water "right at its source." (Tr. 1/11/22, at 72.) As a result, the Trust proposal would not simply remedy the diversion of water caused by the Werthers' (or [Kim's]) alteration of the land **but rather would remedy the "upstream" diversion of water by Upper Dublin.** It would "restore" the land not simply to its condition prior to the Werthers' installation but rather to a condition better than when the Werthers first commenced their work.
>
> Moreover, the proposal would impose a very significant expense on [Kim], to the tune of $583,000 in 2020 dollars. As the [c]ourt stated in its [January 2022 m]emorandum, it would have ordered [Kim] to incur that expense if it was necessary to remedy the continuing harm that he or his predecessors caused to the Trust Parcel. But the [c]ourt declined to compel him to implement a proposal that would go well beyond the modifications needed to address the impact of his or his predecessors' alterations. As the Commonwealth Court has cautioned:
>
>> Although a chancellor's powers are controlled by law in this Commonwealth, he still possesses the broad and flexible ability to grant remedial relief where justice and good conscience so require. This is a sacred responsibility which must be exercised with both due diligence and the full consideration of the rights of all, and with an acute awareness of the harm that may result from tire improvident granting of a specific requested relief.

- 11 -

***Leonard v. Thornburgh***, 463 A.2d 77, 79 (Pa. Cmwlth, 1983) (citation omitted). **In short, [Kim] can be required to remedy what he or the Werthers did to the land, but not what Upper Dublin did.**

The alternative proposal, by [Kim's] engineer, would require dredging or deepening the existing pond and modifying the outlet structures and berm. [Kim's] engineer credibly testified that this proposal would benefit the Trust Parcel by reducing the water flow from the Kim Parcel. And even the Trust's engineer acknowledged that dredging the pond would be "advantageous" and "helpful," although falling short of a complete remedy. (Tr. 1/11/22, at 73.) The [trial c]ourt found from this evidence that "[t]he trespass and private nuisance would be abated, or at least significantly mitigated, by the dredging and/or deepening of the existing pond and modification of the outlet structures and berm." (Memorandum, 1/24/22, at 4.)

The Trust places much weight on the footnote in the [trial c]ourt's [d]ecision that the [c]ourt intended the term "abatement" to have "its usual legal meaning of removal," rather than mere "diminishment" of the nuisance. It is true that the intention of the [d]ecision was to remove, not simply diminish, the increase in water runoff caused by the Werthers' and/or [Kim's] modifications to the land. But at the hearing on a remedy to enforce that intention, the [c]ourt was given only two alternatives — one that the [c]ourt found to be clearly excessive, and the other that would result in a substantial benefit, even if not complete removal of the problem. [The trial c]ourt has no training or experience in engineering that would permit it to devise a middle ground between the two proposals. Rather, it was wholly dependent on the opinions of the expert engineers who testified at the remedy hearing. Faced with two imperfect solutions, and cognizant of the burden of proof borne by the Trust, the [c]ourt selected the less-imperfect option. "The broad equitable powers a court may have to fashion relief do not extend so far as to allow the issuance of alternative injunctive relief where the burden of proof for such relief has not been met." ***City of Duquesne v. Redevelopment Auth.***, No. 1550 C.D. 2018, 2019 WL 2908876, at *6 (Pa. Cmwlth. July 8, 2019) (unreported memorandum opinion).

Trial Court Opinion, 11/15/22, at 19-21 (emphasis added).

The record supports the trial court's rationale for declining to find Kim liable for Upper Dublin Township's diversion of water. **See** Trial Court Opinion, 11/15/22, at 21 (concluding Kim's proposal "was more closely tailored to the extent of the actionable conduct by Mr. Kim and his predecessors."). Appellant has not shown that the trial court "palpably err[ed], misapplied the law or committed a manifest abuse of discretion." **Kinney**, 252 A.3d at 647 (citation omitted). As there are reasonable grounds for the trial court's decision, no relief is due. **Id.**

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/28/2023